Pendleton, President,
delivered the resolution of the court, as follows:
This is a bill to set aside a patent upon the ground of fraud; and whether relief is to be afforded, or not, must depend upon the circumstances of the case; and a correct interpretation of the act of 1779, for adjusting and settling the titles to claimers to unpatented lands, previous to the establishment of the land office. Chanc. Rev. 90.
That act takes up all such claims, and gives rules for the whole. Under it surveys and settlements were provided for; and the method of establishing them prescribed.
The first, that is surveys, consisted of two classes.
1. Surveys under entries, orders of council particularly defined, or proclamations; all enumerated in the first section of the act; and upon these, if regularly made and the law complied with, patents were to issue of course, unless *206 caveats were entered in the register’s office, and lodged in the general court, where they were to be decided according to the usual course of such proceedings. With cases of that kind, the commissioners, appointed by the act, had nothing to do, either to aid, or to destroy them; and therefore they constitute no part of the present enquiry.
2. Surveys made under the other orders of council described in the 10th section of the act. This class was not to be tried upon a caveat in the general court; but the claims were to be laid before the court of appeals, who were to hear and determine them in a summary way; and, as the controversies were merely between the claimants under the orders of council and the public, the attorney general was to attend on behalf of the commonwealth. Chanc. Rev. 94, sect. 10. With surveys of this character, the court of appeals had exclusive cognizance, and no other tribunal could intermeddle with them. For that part of the 8th section, which relates to settlers upon lands surveyed for companies, obviously meant surveys for companies having undisputed titles, and was confined to litigants claiming under such companies. This is proved by the direction, that the clerk shall enter “ The names of all such persons to whom titles shall be adjudged for lands within the surveys made by order of council for any company, with the quantity of land adjudged, and in what survey; and, if the same is only part of such survey, in what manner it shall be located therein, the name or style of the company, and the price to be paid them, with the time from which the same is, to bear interest.” Which plainly supposes valid surveys for coinpanies having secure titles. For the names of all successful applicants were to be enrolled, and all of them were to pay the price of the land, adjudged to them, to the company, who could have had no right to the price, if they had no title to the land : which makes it clear, that the title of the company was to be considered as fixed, and that none, but derivative rights under them, were to be decided by the commissioners.
*207 The result is, that all questions relative to the validity of the second class of surveys were to be determined in the court of appeals only; and consequently, that the decision of that court, in May 1782, was conclusive.
But the claim of the Greenbrier company was under one of the orders of council mentioned in the tenth section of the act; and consequently, the decision of the court of appeals established their right to the survey in question; subject, however, to the derivative rights of others having claims under the company, and the provisions of the seventh section of the law.
It makes no difference that Maze was not a party to that cause; for, from the nature of the thing he could not be ; because the jurisdiction in that instance was special, and confined to controversies between the state and the company.
Maze, therefore, cannot oppose the company, but must claim under them, or give up the contest altogether, as his first occupation commenced in 1764, subsequent to the order of council of 1751, granting the land to the company.
It is urged, however, that the judgment of the general court may have proceeded upon a recognition of the rights of the company, and settled the controversy between the parties to this suit in conformity to those rights and the decision of the court of appeals; and as nothing appears to the contrary, the judgment ought to be considered as final, especially in a court of equity.
But to this the answer is, that the fact is directly otherwise ; for it is admitted in the pleadings, and proved by the testimony in the cause, that nothing but the priority of settlement and the pretended purchase of the cabin right was in controversy, either in the court of commissioners, or in the general court. Of course, the right of the company neither was, nor could have been decided by the latter court.
It is said, however, that the appellants might have introduced the testimony into the general court; and that, if it *208 was fraudulently neglected, and kept back with a view to ulterior proceedings, they are as much barred, as if the survey and the decision of the court of appeals had been laid before the general court.
If, indeed, the survey and decision of the court of appeals had been thus fraudulently neglected and kept back with a view to future proceedings, it would have altered the case; for a court of equity would not have countenanced such unprincipled conduct. But there is no proof of either. Certainly, not of the fraudulent design, and there could be no wilful neglect. For Hamilton was not entitled to the benefit of the survey, until he paid the purchase money to the company; and, as he had not done so, at the time of the trial of the cause in the general court, he could not avail himself of the survey there; which accounts for the failure to produce it upon that occasion; because it was, as to him, a useless paper, until he had satisfied the company, and got his title confirmed, according to the directions of the act of assembly. For, prior, to the payment, the survey belonged to the company; was in the hands of their agent; and they had a right to retain it, as a security for the debt. Accordingly, Hamilton was never able to make any use of it, until he paid the purchase money, and obtained the certificate of the agent of the company to that effect.
It follows, that the company, who were not, in any shape, parties to the contest in the court of commissioners and the general court, were not affected by any thing done there, as both those tribunals, for want of the necessary information relative to the steps which had been taken, acted under a mistake; and neither did, nor could mean to decide upon a title which was not brought before them. Nor is Hamilton affected. For, as he had not a right to use the title of the company, at the periods when the case was tried in those courts, there could be no objection to his setting it up when he afterwards acquired it; because the payment of the purchase money placed him in a new situation, altogether dis *209 connected with the former struggle about the settlement right, and the pretended purchase of it; which were the only matters controverted in the general court.
The case therefore ought to be considered as if this were the first trial upon the merits.
The order of council in October 1751, was equivalent to a location of the 100,000 acres of land for the company; and although it was not fully carried into effect before the Indian war, it was nevertheless considered, notwithstanding what is said about the claims of the officers and soldiers, as still in force, and was confirmed by the order of the 16lh of December, 1773; and, if so, it continued in force until the revolution.
It was therefore an order of council within the meaning of the act of 1779 ; and, as such, was established by the decision of the court of appeals in May 1782.
Maze therefore could not have a preemption right against the survey, as the balance of it was specifically appropriated; and preemption rights are, by the express words of the act of assembly, restrained to- cases where no other person hath a legal right or claim.
It is urged, however, that, as the act of 1779 gives a right of preemption upon any waste and unappropriated lands, and as the company had not fully complied with the orders of council, there was no legal right or claim in the company ; and therefore that the land, so far as the settlers’ right of settlement and preemption extended, was waste and unappropriated. But, to say nothing of the assertion of the appellee in his replication, that he always meant to hold under the company, it is obvious that there is no force in the objection; because the right of settlement, and the right of survey, were both established by the same act of assembly; and therefore the otfe is as effectual as the other. For the relation, with respect to original inception, is as strong as to the orders of council and the survey, as to the settlement : and the statute is not to be garbled as may suit the convenience of parties, but the separate parts ought all to *210 be considered together, and construed in relation to each other, so as to give a reasonable and consistent effect to the whole. Under that view of the case, the settler was to be entitled to 400 acres, and a preemption right besides, where the lands belonged, exclusively, to the commonwealth; but in cases of company lands, although he was to have his settlement certain, his preemption was to be only in lands where the company had made no specific appropriation, or survey. For wherever there was such appropriation, or survey, by the company, the settler was not to be entitled to preemption out of it. When, therefore, the act gave effect to the orders of council and surveys,- it necessarily destroyed all pretensions to a right of preemption against the surveys; because there were then other persons, who had a legal right, or claim, paramount to the right of preemption.
Of course, Maze could not be entitled to more than his settlement against the company, although he might have a preemption right also against the commonwealth, if there were adjacent lands, which had not been notoriously appropriated, or surveyed, by the company.
This brings us to the question of priority between Maze and Hamilton: and there can be no doubt, that the former made thé: first settlement; and that his possession was interrupted by the violence and improper conduct of the latter. ■He ought therefore to be p.ut in the same situation that he would have been in, if the violence and improper behaviour had not taken place. In other words, he ought to have the ■ full benefit of his right of settlement, and the only question is, as to the quantity of land which that entitles him to for his settlement and preemption rights ?
And first as to the settlement:
The order of council in 1773 mentions fifty acres for the settlement, and fifty more for every three acres cleared; but the 7th section .of .the act of 1779, restricts settlers, on company lands, to three hundred acres; which embarrasses the question, as the appellee’s claim is for four hundred, in ■right of settlement.
*211 The difficulty, however, admits of two answers.
The first is, that it is probable, that if Maze had-filed a caveat to the survey in the register’s office, the general court would, under the circumstances and the equity of other sections of the act of assembly, have allowed him the 400 acres against the Hamiltons, whose unjust proceedings had prevented him from completing his title to the usual quantity allowed to settlers, as the company had made no other appropriation of it, than a survey on behalf of the tortfeasors, who ought not to be permitted to take advantage of their own wrong.
The second answer is, that the judgment of the general court has given him 400 acres out of the survey which includes the settlement; and as this is not a proceeding to set aside that judgment, but to enforce it, the specific terms of the sentence, in that respect, cannot be disturbed by the appellant, who tortiously hindered him, from obtaining the usual quantity allowed to settlers.
But the case is very different with regard to the preemption right, and the residue of the survey; for the very judgment, as to the preemption is, that the grant of the 1000 acres under that right, shall be of lands “ to which,” in the words of the act of assembly, “ no other person hath a legal right or claim.” This directly conflicts with the claim of the appellee to the residue of the survey; because the Hamiltons have a legal claim to it under the company : and that necessarily repels the pretensions of Maze, who is only entitled -to satisfy his preemption, if he can find land, for the purpose, not subject to prior claims.
The general court, then, having allowed the 400 acres, and that allowance not being inconsistent with the rights of the company, but being strictly just as it respected the Hamiltons, the latter ought not to have attempted to defeat it, by the manee,uvre of procuring the plat, and obtaining a patent for the' whole,1100 acres. Therefore, the appellants ought now to,convey to the appellee, so much of the land within the survey, as his right of settlement calls for.
*212 It was said, however, that the appellee ought to have filed a caveat to the survey, in the register’s office; and that his failure to do so precludes him from insisting on his prior right now. But the objection does not apply; for, although it be true, that where a caveat can, it ought to, be entered ; and that where a party has a legal remedy, and fails to avail himself of it, without a reasonable excuse, a court of equity will not, in general relieve; yet the circumstances of the present ease were particular, and account for the failure. The omission to caveat therefore ought riot to be considered as having shut the door to relief; but the case ought to be decided upon its real merits.
Consequently, if the chancellor had directed the 400 acres only, to be taken out of the survey, his opinion would have been affirmed; but he has gone further, and ordered the preemption to be taken out of it also. In which respect, we think he erred.
The decree is therefore reversed; and the following is to be the entry :
“This day came the parties, by their counsel, and the court having maturely considered the transcript of the record and the arguments of the counsel, is of opinion, that the said decree is erroneous : Therefore, it is decreed and ordered, that the same be reversed and annulled, and that the appellee pay to the appellants, their costs by them expended in the prosecution of their appeal aforesaid, here. And it is further decreed and ordered, that a survey be made of the four hundred acres of land for the settlement, to lie south of a line to be run from a spring opposite to Christopher Wamp's, as the same shall appear to have been made by agreement, between the appellee and John Tackett, in the proceedings mentioned, so as to include the cabin and settlement, and which may be laid down as either party shall direct, to enable the court of chancery to decide between them, on the propriety or reasonableness of the location ; that the appellant Andrew's patent of one thousand one hundred acres, be also surveyed and laid down, to shew *213 how far the same doth interfere with the said four hundred acres; which being adjusted by the court of chancery, that the said appellant be decreed to convey to the appellee, the inheritance of so much of the said four hundred acres, as shall be found to lie within the bounds of the said appellant’s patent, with warranty against himself and all persons claiming under him, and deliver him possession thereof, upon the appellee’s paying to him, at the rate of three pounds per hundred acres, for the quantity so to be conveyed ; and as to the residue of the said one thousand one hundred acres, that the bill be dismissed. But the appellee is, nevertheless, to be at liberty to proceed to survey the one thousand acres of land for his preemption, if he can find land to satisfy the same, without interfering with the said patent or other prior claim.”